Our next case is cause number 16-20195, Lyda Swinerton Builders v. Oklahoma Surety Company. You may proceed. Thank you, Your Honor. Brent Cooper and Diana Faust for Oklahoma Surety Company. There were two issues that I'd like to use or address in the time we have here today. First issue is the anti-stacking provisions that Texas has and how it applies in this case. The second is to respond to the Court's letter on Menchaca and what impact, if any, the Menchaca case has with respect to the trial court's ruling in this case. Now, first, with respect to the anti-stacking rule that currently exists in Texas, in this case, Swinerton was defended, Lewis and Bristow, all of Lewis and Bristow's fees were paid by various general liability carriers, including one of the carriers for Willis, who was a subcontractor and who did part of the work. CNA had the coverage for Willis for five or six years. Oklahoma Surety had the coverage for Willis for one year, 2006 to 2007. The question then is, having already received one defense, are they entitled to seek a separate defense from another general liability carrier for Willis under the anti-stacking rule? And this Court no— The cases I see applying that rule apply it to the duty to indemnify. What's your best case applying it to the duty to defend, which is all we're dealing with here? Two past cases, one pending case. The past cases are the Academy Development v. Midcontinent case where there was no duty to trial that case, and the question in there was, which carrier could it select to pay the defense? This Court in 2012 said, under the Garcia case, you can pick the carrier that gives you the best deal, the best coverage for the defense. Second case is another case from this Court called North America— That didn't—I mean, that didn't say—it didn't say you couldn't get two different coverages, and if someone paid the coverage or paid for the duty to defend, they were off the hook. You're creating a rule where the incentive would be never to defend where there's multiple policies, because then once someone does, you're off the hook, right? Absolutely not. Well, why not? Because under Garcia, the Court said that if it's carrier A that defends, then it is equitably subrogated to the carriers whose coverage was triggered but did not defend. In fact, if you look at the settlement agreement that was entered into between Swinnerton and Garcia, there is no maturity for its subrogation rights that exist or were created under the Garcia case. The second case—again, trying to respond—North America, especially, versus Royal Surplus, 2008. In that case, the defendant insured wanted to put defense under one policy and put indemnity under another policy, and this Court said, no, you get one. You get to pick one, and that's the one that pays. There is a case currently before this Court, Judge Graves was on the panel, that was heard in February called Longhorn Gasket, where there was a series of primary carriers. The insured picked one. That one exhausted, so there was no longer a duty to defend. And the question then was, could the insured go and pick another primary carrier, or was the exhaustion vertical as opposed to horizontal? The trial judge in that case, Judge Folsom, said, no, you have vertical exhaustion. You don't get to pick multiple primary carriers for defense or for indemnity. And that issue is before this Court and was argued in February of this year. And why do you not get to pick multiple ones? Because there is the subrogation right. If they can sue us and get money, and then CNA can sue us and get money, then basically Oklahoma surety is being exposed to double exposure. And the Court, I believe, in the Garcia case was very clear that the carrier who's selected, they pay, and then they are charged with the task of recouping from the other insurers whose coverage was triggered. JUSTICE KENNEDY How does this work as a practical matter? You've got two or three insurers who potentially owe a defense. Do all of them just play chicken and see which one will take over? So everybody sits back and lets the insured leave him to manage as best he can? JUSTICE KENNEDY In the Waldron-Gast case, the insured chose one particular policy year because it was the most favorable one. Sometimes, Judge Davis, there is a sharing. I'll tell you, there's a sharing among carriers so that the subrogation takes place before as opposed to after. But in other cases, the insured says, I want to pick this carrier because of some reason. It could be, for example, that some of the other years have exhausted or about exhausted through erosion of their policy limits. And so they've got full limits available here, and they do that. JUSTICE KENNEDY Or do they make demand on your company to defend? JUSTICE KENNEDY They do. And if you look at the court's record, what you will see is that we were basing our decision not to defend on a decision from this court until it was later reversed by the Texas Supreme Court. It was the Ewing decision for the court. I can't remember, Judge Davis, if you were on that panel or not. But they originally went with the insurer on that case. It got certified to the Texas Supreme Court. Then it got reversed at the Texas Supreme Court level. So isn't the whole purpose of the anti-stacking rule that you can't be better off? You can't multiply coverage. Isn't that what the courts have used to say? You can't multiply coverage. Part of it goes to the definition of an occurrence. And the court says, when you have a continuing injury, can you look at the definition of occurrence in the policy? It includes repeated exposure to the same or generally the same conditions. And going back as far as the Garcia case, the court has said, based upon that policy language, you don't get to recover from every one. You get one. And if you recall, that was a medical malpractice case where this person had been taking Haldol for three successive years. It developed tardive dyskinesia. And obviously, there was personal injury during the three years. But the court said, you only get one. That was an indemnity. It was not defense. But we believe that with respect to the academy development as well as the world surplus, it's been applied to defense as well. So if Swinerton cannot stack, they've already settled with CNA, got their defense costs, full policy limits, then the rest of the case is moved. But the court has asked us to look at the issue regarding Menchonka. And when the case was briefed, Menchonka did not exist in the law in the Fifth Circuit, at least at that time under the Parkins case and under the AFS-IBS case was that there had to be independent injury to recover under the insurance code. And the question is, what was the impact of the Menchonka case on that rule? And in the Menchonka case, the Supreme Court sets out five rules. There are two that I would submit to the court that are pertinent and pertain to this case. The first one that's pertinent and pertains to this case is rule number two. And rule number two is, according to Justice Boyd, the entitled to benefits rule. And what Justice Boyd said in that case was an insured who established a right to receive under the statute if the insurer's statutory violation causes the loss of those benefits. Counsel for the other side, Forrest Winterton, has focused on that in their letter briefed to the court last week. However, you can't just stop at rule number two. You also have to look at the remainder of the rules. And the other one that's relevant is rule number four. And rule number four is the independent injury rule. And Justice Boyd, when he articulates that rule, he says there's two aspects. The first aspect is irrelevant, so we're not going to talk about it. The second aspect is relevant. And the second aspect in the independent injury rule is that the insurer's statutory violation does not permit the insurer to recover any damages beyond the benefits unless the violation causes an injury that is independent from the loss of benefits. And when you're reading that case, Justice Boyd cites two cases in support of that rule. One is a Texas Supreme Court case, Twin City Fire v. Davis out of 1995. And in that case, the Supreme Court said, if you're wanting to get punitives for a violation of the code, you've got to show independent injury. The second case that was cited by the Texas Supreme Court in support of that rule was a case out of the Southern District by Judge Gray Miller, and it was Powell v. National Union Fire Insurance Company. And in the Powell case, which is cited as an example with approval by the Texas Supreme Court, that was a case where there was coverage, and they were trying to seek damages under 541 of the insurance code. And what Judge Gray Miller says in that case is that National Union asserts, in response to Powell's motion for summary judgment, as a basis for National Union's motion for summary judgment, that Powell has failed to allege damage independent of the damages arising from the underlying breach of the insurance contract. That's what we held in Great America, and I thought the Supreme Court of Texas said, we got it wrong. I think what they said was, you got it partly wrong. And what, you know, the question then — I didn't see partly in there. Okay. Well, this is where I think the Supreme Court's going. And the question is, how do you reconcile 4 with 2? You say that 4 is for claims when there is no coverage under the policy. No, 4 is where there — I mean, obviously, in the Powell-Electric, there was coverage. In the Southern District case. There was clearly coverage in that case. And this is where I think the courts are going. And that is, contractual damages or extra contractual damages may be recoverable as damages under an insurance code violation if the insured can demonstrate an independent injury. Before, they weren't damages at all. Now, under Vail, under Rule No. 2, they can be damages, but as a predicate, the insured is required to show independent injury. In fact, since Menchaca was decided, there have been three decisions that have interpreted it. One of them was, in fact, counsel for Swinerton that provided the court with two of them. One of them is from Judge Boyle in the Northern District, certain underwriters versus Lowen Valley View. And that came out July 21st, I think, last week. And so that case said, if there's no coverage, then you do have to have independent injury. Okay. We believe that's really what governs this case because of the no stacking rule. But there's two other ones that have come down. One is State Farm versus Webb on May 4th of 2017, which is the Beaumont Court of Appeals. And in there, there was coverage. And they were trying to get Chapter 541 damages. And the Court of Appeals in that case, following the language from Menchaca that I just quoted the court, said, basically, we hold that Webb could not recover extra contractual damages beyond the policy benefits for his claims under the insurance code because he failed to demonstrate damages independent from the loss of the benefits. So they said, you're limited just to your policy benefits unless you can show independent injury. Later, May 23rd, 2017, Houston 14th Court of Appeals, there's a case called National Security Fire versus Hearst, H-U-R-S-T. Again, the court said, it's undisputed that Hearst had a right to receive benefits under the insurance policy. So coverage was clearly established in that case. But the court goes on, in order to recover any damages beyond the policy benefits, the statutory violation or bad faith must cause an injury that is independent from the loss of the benefits. And basically, they were citing, as that authority, Menchaca at Star 11 and Star 12, which is the discussion of the independent injury rule. So since Menchaca has come out, we've had two courts of appeals in Texas have said, yes, your policy benefits can be damages, but in order to use those as damages, you've got to show an independent injury. In this case, Judge Ellison found there was no independent injury, despite the efforts from counsel for Swinerton. And we believe, based on the law that existed at the time versus the law that currently exists under Menchaca, that he made the right call. So what's the force of the, what you're calling rule number two? What does that get you if you still have to show independent injury? The question, I think this is where it gets you. And I've thought long about this. OK. It can be damages. So if you show independent injury, and you're trying to get punitive damages, or you're trying to get treble damages, and you show independent injury, they can be trebled. Or if we're dealing with the punitive damage cap under 41.008, and the question is, you know, what are the damages that are going to be used to determine the cap? They can be used to determine the cap. But they only can be used to determine the cap or punitive damages if there has been an independent injury. Beforehand, I think the law was, you can't even use them for that. And so it's sort of, following Vail, they brought it up to at least where you can use it for cap purposes, for treble purposes, if there is an independent injury that's shown. Thank you, Judge. May it please the Court, Joseph, I'll leave before I just wanted to, let me start with the anti-stacking. Yes. And Judge Davis asked a question about practicalities, and I want to get into that in a moment. The key here is a separation between the duty to defend and the duty to indemnify. The anti-stacking rule only applies under Texas law with respect to the duty to indemnify. There's one exception. That is, it can apply to the duty to defend if the defense obligation is self-reloading. In other words, if the defense is within limits and it arose as defense dollars are being expended, then the anti-stacking rule has been applied in that instance only. Where the defense is outside of limits, the anti-stacking rule does not apply with respect to the duty to defend. What's your best case for that? And the case is right on point, and it was cited incorrectly by counsel, North American Specialty Insurance Company, it's 541, Fed Third, 552. That is where we have a self-reloading policy. That means we're self-burning policies where the defense eats up the limits. Then the anti-stacking rule would apply in that instance only with respect to the defense obligation. Now, LSB was defended in this case? Let me go into that for a moment. We have to step back for a second. When the tenders were made to all the carriers, all the carriers denied, including OSC. How many carriers were involved? There's about 12 or 13 additional insured carriers, subcontractors who all named Leiter Swininton. Lawsuit involved, they all settled with Leiter Swininton with the exception of OSC. The defense by CNA, the co-carrier for A.D. Willis, was they paid a million dollars towards settlement. That $1 million of the defense was prescribed by ARCH, the direct carrier for Swininton, to go towards the settlement. It was never going to the defense. It went to the settlement of the case, and Swininton, undisputed testimony at trial, never controverted in court, was that Swininton paid $135,000 of the defense and then the $500,000 of the deductible. It paid its own defense totaling $650,000. That's undisputed on the record. Now, something else is important here. Counsel blurs the distinction between targeting and the ability to select a carrier on risk, whether it's a continuing loss or an indivisible loss, from the issue of anti-stacking. In other words, just because an insured can target and select counsel of its choice in a situation where there's multiple carriers and chooses one carrier to defend, that's multiple carriers have agreed to defend, and he can choose, if he so chooses, one of those carriers to defend and indemnify. You asked a practical question. When a carrier is asked to defend amongst other carriers, what's the practical effect? All the carriers voluntarily share in the defense when they all agree to defend with or without reservation of rights. But when it comes to the duty to indemnify, and we have an indivisible loss, at some point, either the carriers will decide to split the indemnity obligation pro rata or some other time on risk basis, or the insured will select. The fallacy here is that Swannington was never given the opportunity to target or select OSC versus CNA because OSC never agreed to defend. And if you take their position to its logical conclusion, if all the AI carriers deny coverage, then the last one standing who agrees to defend, that's the chosen carrier to defend and indemnify. All the other carriers get off scot-free, and that's exactly the policy that's being forwarded here in this case by OSC. Counsel says that the carrier that elects to defend can then get contribution from the other carriers. Let's go to that question. We talked about the first step. Everybody's defending because nobody knows where the damages are at the beginning of the commencement of a lawsuit, right? So the carriers can either agree to share, and there's no contribution claims against each other, but the other carrier, let's say there's one recalcitrant carrier such as OSC, they would be subject to a contribution action. So CNA could sue for contribution on its million dollars it paid. That money went to indemnifications towards settlement of the case. That's undisputed. And in fact, the contribution claim made by CNA, if it ever goes against OSC, is separate and apart and distinct from the monies that the insured paid out of pocket. The million dollars CNA paid to the carriers to settle the case, what Swinnington paid is its defense dollars to reimburse itself to its own defense counsel. In other words, these are two different buckets. There's no double recovery here. Just because OSC is subject to contribution by CNA for the monies that it paid, a million dollars that went to the settlement, that doesn't preclude Swinnington from pursuing its out-of-pocket unreimbursed defense fees and costs. Another point on this issue. But could you sue? You could sue for contribution of the defense cost in a situation where there's one insurer is not providing a defense. CNA could have sued for contribution in this action, intervened on the one million it paid, and we'd be seeking our 650 that we paid. Two separate buckets. They're not the same dollars. One goes to defense reimbursement. One goes to reimburse the carrier for indemnifying the one million dollars towards the settlement of the underlying action. Another point. When a carrier denies coverage, it waives and is stopped from asserting whether or not the insured controlled its defense correctly or incorrectly. In other words, the selection of counsel is the right of the insured once the carrier denies coverage. It cannot now come back and complain, saying, well, you know, you had Lewis-Brisbois. They're a fine firm. Why did you not stick with them? They have been stopped from doing that. If they wanted Lewis-Brisbois, they should have picked up the defense promptly upon the date of tender. And they did not do so, and they forfeited that right. And this case is on that point as well. Look at the Rhodes case at 719, Fed Second at 116, and North County Mutual at 140, Southwest Third, 685. These courts have concluded that when a carrier denies coverage, it does so at its own risk, and the insured can control the defense as it sees fit. In this case, the insured wanted the Coconuts firm to associate in with the Lewis-Brisbois firm and paid those monies out of pocket to defend itself. Anything else on the anti-stacking? And again, I ask the court to look at the cases. There's a distinction between the right to select and target, and that is a separate doctrine from the anti-stacking principle. Is the Mid-Continent case out of the Southern District, is that an eroding policy where it was applied to the duty to defend? That case, the insured was allowed to target, but the court did not get into the issue of stacking on the duty to defend. It just said the obligation to defend is shared by all carriers absolutely, separately, and all of the entire case. Each carrier has that separate duty to defend the entire case, and the insured can select any one of those carriers that has that duty to defend the entirety of the action. But the Mid-Continent case, since the company of OSC did not rule that anti-stacking applies to the defense obligation. That's the distinction that was not made by appellate. Anything else on an anti-stacking or targeting? Now we get to Machado. This case by the Supreme Court, as you know, is an agonizing decision trying to correct confusion and misunderstandings in the law previously. And the court went to great pains to try to correct the record and try to establish what they meant. And I do believe that there are five rules enunciated, but I disagree with counsel's interpretation of what those five rules are. The first rule is that an insured cannot recover policy benefits as actual damages if there's no right to those benefits. There's no right to benefits. There's no actual damages. That's rule one. Rule two, which applies here, is a reaffirmation of the Vail decision, a prior Supreme Court decision. That case holds that where the insured establishes that the insurance company has unreasonably withheld policy benefits, those benefits are recoverable as actual damages. And that's important. That's what we have here. Here, we have seen deceptive trade practices by OSC and its denial of coverage, which I'll get into in a moment. And the lost policy benefits, there's two benefits under a policy, duty to defend, duty to indemnify. The duty to defend is what the policy benefit allowed in this case. And OSC did not defend, causing the insured, the additional insured to be out of pocket, approximately $660,000. What are those deceptive trade practices? As an example, OSC denied coverage based on the absence of an occurrence. Well, that disinclines, it disobeys the Lamar's decision. On construction defects, we know we have an occurrence. We know we have issues concerning the extent of property damage and the timing of that property damage. Mr. Nyes is the corporate designee. He testified under oath on an executive committee level that the insurance company was wrong to deny coverage based on its claim of lack of occurrence, absence of property damage, or lack of property damage during the policy period. He admitted to that. In fact, as another example of deceptive trade practices, the denial was, in fact, made part of a principle that there has to be a prior adjudication of liability, A.D. Willis, before the defense obligation incepted. Clearly wrong. No policy term requires an adjudication of liability before the defense obligation occurs. This is not a reimbursement policy. The duty to defend is immediate. And, in fact, if Swinerton tendered after there's an adjudication of liability, they would have claimed late notice and prejudice and absence of coverage. There are a series of deceptive practices here. And rule two applies, and we call that the entitlement to benefits rule, where, again, Menchaca reaffirms Vail that says where the insured has been entitled to coverage and was unreasonably withheld, those benefits are recoverable as actual damages, regardless of any separate injury. The actual damages are the lost policy benefits. Rule three is what's sometimes called the benefit loss rule. And if an insurance company owes policy benefits, those benefits are actual damages if the insurance company, through a misrepresentation of coverage or through a violation of the statute, causes a loss of those benefits. Once again, the policy benefits are the measure of actual damages, whether it's a misrepresentation and a coverage owed under the policy that was deprived of by the carriage conduct. Then we get to the fourth rule. And this is where the Supreme Court in Menchaca reaffirms the Stoker rule. But this is where we have a requirement of an independent injury arising from the statutory claim when, in fact, there's no coverage owed under the policy. Where there's no coverage owed, that's when the independent injury must be established. Again, where there's no coverage owed under the policy. Maybe it's just a misnamed doctrine, but then why is it an independent injury? Because if the policy benefits don't pay, because you're not entitled to the policy, there's no injury there. So it really is just, your interpretation is you really just need one injury. It counts if you were owed policy benefits, which is your client, you're saying. And in the context where you're not owed benefits, well, you have to show some injury. It can't be the policy benefits, but you have to show an injury outside of the payment of policy benefits. I think that's aptly stated. But so it's not really an, it's an injury rule requirement as you see it. That's correct. And, in fact, if you look at the Stoker-Shephardi-Stoker, and that's 22 years old. We haven't seen one of those cases yet. That's how rare it is to find a separate injury when there's no policy benefits. But there could be an example. Let's say the carrier slanders the insurer during the claims handling, but there's no coverage owed. And that causes a loss of business reputation or a suspension of income because of the impact of the business disparagement. That might be a separate injury where there's no coverage owed under the policy. That might be an example of something like that. Are you familiar with the Beaumont and Houston Court of Appeals decision that Opposing Counsel says, if in Redmond-Chaka, not to allow trouble damages in your client's  And that's, again, a misstatement of those cases. I beg you guys to please read those cases again. It doesn't say that. In fact, in those cases, there was no deceptive practice. In other words, there was contractual liability, but there was no egregious, tortious breach of the policy benefits. That's the issue here. So if the policy is And on that, I mean, you were trying to argue before us why there was this fraudulent or wrongful conduct. If we were to agree with your reading of Menchaca, wouldn't we just remand to Judge Ellison to decide that in the first instance, whether there's actual liability under the statute? In fact, we tried the case on the deceptive practices, and the judge said, wait, why did we do this? You didn't show independent injury based on the court's prior ruling before Menchaca. And the court, Judge Ellison disregarded the Vale case, which has been reaffirmed that I've just described. And so that is the reasons why it needs to be remanded to determine whether the insurer's entitled to extra contractual liability, one, two, or three times, up to the trouble damages of the actual damage. In the state court, I'm sorry, in the State Farms Lloyds versus Webb case, rather getting into a credibility contest with counsel, I'm going to quote something that would be very helpful. Quote from this court. This is the Webb decision. It's on page 11 of this decision. The independent injury rule does not apply if the insured's statutory or extra contractual claims are predicated on the loss being covered under the insurance policy, or if the damages flow from the denial of a claim for policy benefits, close quote. Of course, in Webb, the court found no deceptive practices. It's just a reasonable dispute between the parties. Trouble damages were not given to the insured in that case. It was a mere breach of contract claim, breach of policy terms and conditions, but not deceptive practices, nor any other statutory duty. So therefore, extra contractual liability was not given. But note what the court says. Quote again. Independent injury rule does not apply if the insured's statutory or contractual claims are predicated on the loss covered under the policy. And that is, again, the Vail decision, as well as Machaca. Now, in the certain underwriters of Lloyds versus Lowen, we've given the justices copies. I'm going to quote exactly what Judge Costa just asked. Where is there extra contractual liability? On page 17, I'm going to quote again on this decision. Defendants have not demonstrated that the claim damage was covered under the policy. So if it's not covered, what do we know? We have to show a separate injury. And the court goes on to say, as noted in the language of the Machaca case, quote, a right to receive benefits under the policy is the prerequisite for these damages. So the court states that the only route to damages for a statutory violation would be to demonstrate that they suffered an injury independent of the policy because there's no coverage owed under the policy. And that's the Lowen case. Questions? Thank you. Thank you, counsel. Roboto? I'll go in reverse order. First off, counsel says, well, rule number four in Machaca only applies if there's no coverage. Let's look at what the Supreme Court said. Supreme Court said there are two aspects to the independent injury rule. The first is that if an insurer's statutory violation causes an injury independent of the right to recover benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive those benefits. That's aspect number one. So no coverage, but your wrongful act causes some independent injury. And they said there's a second aspect as well. Now, counsel just focused on the first aspect. The second aspect of the independent injury rule is this. Quote, an insurer's statutory violation does not permit the insured to recover any damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits. And so you've got to read both of them. You can't just look at one. You've got to have two. And that was what both of them... When Chalkis says it reaffirms vial, you agreed under rule two. Let me finish my question. Under rule two, it said we reaffirmed vial. The Fifth Circuit was wrong to think vial had been eroded over the years. When vial was controlling back in the 80s, couldn't you get treble damages under the insurance code if there was wrongful conduct? Of course there has to be wrongful conduct, but in the nonpayment of benefits that were due? Because now we're back in a vial world, right? We're doing up to like, in the late 80s, that was true. But then the Supreme Court further modified it with Twin City versus Davis, which they cited with approval, which said, for example, if you wanted to recover punitive damages, you had to show something other than policy damages, benefits under the policy. You had to show some independent injury. Costanada, some of the other ones where they had the independent injury added on after vial. But now the Supreme Court says those did not erode vial. Vial is still good law, so why don't we go back to look what Texas courts were doing in the years following, the few years following vial? The only issue in vial was, can the policy limits be damages under chapter 541? And the court said, that is still good. But what the court did as well is reconcile it with some of its later decisions, which said, in order to get 541 damages, there are these hurdles you have to get over, such as independent injury. Then if you can't jump over this hurdle, then the damages under the policy pursuant to vial can be treble, they can be the basis for punitive damages or whatever. But the court really wasn't overruling Costanada, wasn't overruling Davis, wasn't overruling Stoker. It's trying to make sense, Judge Boyd, Justice Boyd, of all the decisions. Obviously, we didn't have those later decisions at the time vial was decided in 87 or 88, when it was decided. But we did have them later, and what they tried to do, the court in Menchaca, is put them together and get a cohesive framework for judges and lawyers alike to guide their decision making. And so, I agree with you, Judge Costa, vial is still good law. But the only principle that it was continued on is policy limits can be damages under Chapter 41 if you meet the rest of the requirements. And then the five rules set out the rest of the requirements that exist as the Beaumont Court of Appeals, as the Houston Court of Appeals have said. Now, they also talked about the anti-stacking, North American especially. He says it only applies to eroding. Actually, what this court said is, we're not going to treat eroding policies any differently than non-eroding policies. And so we're going to treat them the same, and we're not going to let you pick two carriers under eroding concept because it's eroding. Hence, the same rule would apply to non-eroding policies such as what we have in here. Longhorn gasket, again, there's no way the trial court gets to where it did. If you can pick more than one policy year because, I mean, for defense. There's no way it gets there. Finally, with respect to Academy, it was not eroding. There was a big SIR for certain policy limits. And so the Academy development in that case, they wanted to pick the one year where there was no self-insured retention. And that was the reason they picked the mid-continent year, was because they didn't have the self-insured retention. All right, thank you. The court will take this matter under advisement.